REED SMITH LLP
Kurt F. Gwynne, Esq.
Casey D. Laffey, Esq.
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: kgwynne@reedsmith.com
E-mail: claffey@reedsmith.com

REED SMITH LLP
Derek J. Baker, Esq.
(admitted *pro hac vice*)
1717 Arch Street
Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: dbaker@reedsmith.com

REED SMITH LLP
Keith M. Aurzada, Esq.
(admitted *pro hac vice*)
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
Telephone: (469)-680-4200
Facsimile: (469) 680-4299
E-mail: kaurzada@reedsmith.com

*Counsel to the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | X : | Chapter 11 |
| SVB FINANCIAL GROUP,[1] | : : | |
| Debtor. | : : | Case No. 23-10367 (MG) |
| | X | |
| SVB FINANCIAL GROUP, | : | |
| Plaintiff, | : : | Adv. Pr. No. 23-01137 (MG) |
| v. | : | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, and FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A., | : : : : : : | |
| Defendants. | : : | |
| | X | |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS**
**RECEIVER FOR SILICON VALLEY BANK, FOR AN ORDER WITHDRAWING**
**THE REFERENCE OF ADVERSARY PROCEEDING PURSUANT TO**
**28 U.S.C. § 157 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 5011**

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 3

A.    The Collapse of Silicon Valley Bank, the Systemic Risk Exception, and
      Commencement of the Debtors' Case. ................................................................... 3

B.    The Complaint and its Claims for Payment from FDIC-R1. ............................... 4

C.    The Debtor Invoked FIRREA's Mandatory, Exclusive Claims Process. ........... 5

ARGUMENT ....................................................................................................................... 6

A.    Withdrawal of the Reference Is Mandatory Because Resolution of the Adversary
      Proceeding Requires Consideration of Many Substantial Title 12 Issues (Some of
      Which Are Novel). ................................................................................................ 6

B.    Alternatively, the Court Should Withdraw the Reference of this Adversary
      Proceeding for "Cause." ...................................................................................... 14

      1.    The Debtor's Non-Core Claims Weigh in Favor of Withdrawal of the
            Reference. ................................................................................................ 15

      2.    Efficiency Weighs in Favor of Withdrawal of the Reference. .............. 20

      3.    The Legal Nature of the Relief Sought by the Debtor Weighs in Favor of
            Withdrawal of the Reference. ................................................................. 21

      4.    Withdrawal of the Reference Would Discourage the Debtor's Forum
            Shopping. ................................................................................................ 22

      5.    Uniformity in the Administration of Bankruptcy Law (and FIRREA)
            Supports Withdrawing the Reference. ................................................... 23

CONCLUSION .................................................................................................................. 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Binder & Binder, P.C. v. Finnie (In re Finnie)*,
  2007 Bankr. LEXIS 1895 (Bankr. S.D.N.Y. May 29, 2007)...................................................17

*Blvds. Shops & Offices at Scenic, LLC v. Blvds. Shops & Offices at Scenic, LLC*,
  2010 U.S. Dist. LEXIS 151100 (N.D. Ga. Sept. 21, 2010) ......................................................11

*Branch v. FDIC*,
  825 F. Supp. 384 (D. Mass. 1993) ...................................................................................14, 19

*Carvel v. Ross*,
  2011 U.S. Dist. LEXIS 25203 (S.D.N.Y. Feb. 16, 2011)..........................................................21

*In re CIS Corp.*,
  140 B.R. 351 (S.D.N.Y. 1992)...............................................................................................12

*City of New York v. Exxon Corp.*,
  932 F.2d 1020 (2d Cir. 1991)................................................................................................13

*CM Capital Servs., LLC v. Stewart Title of Nev.*,
  2010 U.S. Dist. LEXIS 118011 (D. Nev. Nov. 5, 2010) ..........................................................11

*In re Coudert Bros.*,
  2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011).........................................................................23

*Dairy Queen, Inc. v. Wood*,
  369 U.S. 469 (1962)..............................................................................................................21

*In re Deltacorp, Inc.*,
  111 B.R. 419 (Bankr. S.D.N.Y. 1990)....................................................................................11

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
  462 B.R. 457 (S.D.N.Y. 2011)...............................................................................................21

*DeWitt Rehabilitation and Nursing Ctr., Inc. v. Columbia Cas. Co.*,
  464 B.R. 587 (S.D.N.Y. 2012)...............................................................................................15

*In re Enron Corp.*,
  388 B.R. 131 (S.D.N.Y. 2008)..................................................................................................7

*Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*,
  2004 U.S. Dist. LEXIS 23868 (S.D.N.Y. Nov. 22, 2004).........................................................7

*FDIC v. Amfin Fin. Corp.*,
 2011 U.S. Dist. LEXIS 60297 (N.D. Ohio June 6, 2011) ..................................................20

*FDIC v. Amtrust Fin. Corp. (In re Amtrust Fin. Corp.)*,
 694 F.3d 741 (6th Cir. 2022) ....................................................................................1, 12

*Frazier v. Colonial Bank*,
 2011 U.S. Dist. LEXIS 22630 (M.D. Ala. Feb. 16, 2011) ...............................................10, 22

*Geltzer v. Bloom (In re Silverman Laces, Inc.)*,
 404 B.R. 345 (Bankr. S.D. N.Y. 2009) ..................................................................................22

*Joyce v. Devastey*,
 2013 U.S. Dist. LEXIS 6392 (E.D. Pa. Jan. 16, 2013) ........................................................10

*In re Kentile Floors, Inc.*,
 1995 WL 479512 (S.D.N.Y. 1995) ..........................................................................................21

*Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*,
 2004 WL 1048239 (S.D.N.Y. May 7, 2004) ..........................................................................15

*Kirschenbaum v. Fed. Ins. Co. (In re EMS Financial Services, LLC)*,
 491 B.R. 196 (E.D.N.Y 2013) ................................................................................................21

*Kraken Inv. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)*,
 475 B.R. 9 (S.D.N.Y. 2012) ....................................................................................................17

*Lawson v. Fleet Bank of Maine*,
 807 F. Supp. 136 (D. Me. 1992), *aff'd sub nom. Lawson v. F.D.I.C.*, 3 F.3d 11
 (1st Cir. 1993) ........................................................................................................................14

*Lubin v. Cincinnati Ins. Co. (In re Lubin)*,
 411 B.R. 801 (N.D. Ga. 2009) ................................................................................................11

*M Fabrikant & Sons, Inc. v. Long's Jewelers Ltd.*,
 2008 U.S. Dist. LEXIS 50247 (S.D.N.Y. June 26, 2008) ......................................................16

*MBNA America Bank, N.A. v. Hill*,
 436 F.3d 104 (2d Cir. 2006) ....................................................................................................15

*McCrory Corp. v. 99 [cents] Only Stores (In re McCrory Corp.)*,
 160 B.R. 502 (S.D.N.Y. 1993) ............................................................................................7, 15

*In re Mid America Entertainment Plus, Inc.*,
 135 B.R. 419 (Bankr. D. Kan. 1991) ......................................................................................11

*Mirant Corp. v. The S. Co.*,
 337 B.R. 107 (N.D. Tex. 2006) ................................................................................................20

*In re Murphy,*
    482 F. App'x 624 (2d Cir. 2012) ...................................................................15

*Nw. Airlines Corp. v. City of Los Angeles (In re Nw. Airlines Corp.),*
    384 B.R. 51 (S.D.N.Y. 2008)........................................................................15

*In re Orion Pictures Corp.,*
    4 F.3d 1095 (2d Cir. 1993).............................................................15, 18, 22

*Penson Techs. LLC v. Schonfeld Grp. Holdings LLC (In re Penson Worldwide, Inc.),*
    587 B.R. 6 (Bankr. D. Del. 2018) .................................................................16

*In re Peoples Bankshares, Ltd.,*
    68 B.R. 536 (Bankr. N.D. Iowa 1986) ..........................................................11

*Scott v. Am. Sec. Ins. Co. (In re Scott),*
    572 B.R. 492 (Bankr. S.D.N.Y. 2017)..........................................................17

*In re Se. Materials, Inc.,*
    467 B.R. 337 (Bankr. M.D.N.C. 2012)..........................................................18

*Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC,*
    486 B.R. 579 (S.D.N.Y. 2013).......................................................................12

*Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.),*
    922 F.2d 984 (2d Cir. 1990)............................................................................7

*Simler v. Conner,*
    372 U.S. 221 (1963) (*per curiam*) ...............................................................22

*St. Paul Mercury Ins. Co. v. Montgomery Cnty. Bankshares, Inc.,*
    2014 U.S. Dist. LEXIS 185050 (Bankr. N.D. Ga. Dec. 30, 2014) ..........................10

*Vieira v. Anderson (In re Beach First Nat'l Bancshares),*
    702 F.3d 772 (4th Cir. 2012) ........................................................................12

*Weiner's, Inc. v. T.G. & Y. Stores Co.,*
    191 B.R. 30 (S.D.N.Y. 1996)...................................................................18, 19

*Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan,*
    2004 U.S. Dist. LEXIS 26070 (S.D.N.Y. Dec. 29, 2004) ...................................22

**Statutes**

11 U.S.C. § 101 *et seq.*.................................................................................1

11 U.S.C. § 109(b)(2) ....................................................................................10

11 U.S.C. § 542(b) ............................................................................................................18

12 U.S.C. § 1821(i)(2) ...................................................................................................9, 19

12 U.S.C. § 1821(i)(3) ...................................................................................................9, 19

12 U.S.C. § 1821(i)(3)(A) .................................................................................................14

12 U.S.C. § 1821(d)(2) ........................................................................................................1

12 U.S.C. § 1821(d)(3)-(5) ...............................................................................................18

12 U.S.C. § 1821(d)(3)-(13) ...............................................................................................9

12 U.S.C. § 1821(d)(3)(B)-(C) ...........................................................................................5

12 U.S.C. § 1821(d)(3)-(d)(13) ..........................................................................................1

12 U.S.C. § 1821(d)(5)(A) .............................................................................................9, 20

12 U.S.C. § 1821(d)(6)(A) .............................................................................................9, 23

12 U.S.C. § 1821(d)(10) .....................................................................................................18

12 U.S.C. § 1821(d)(10)(A) .................................................................................................9

12 U.S.C. § 1821(d)(10)(B) .................................................................................................9

12 U.S.C. § 1821(d)(11)(A)(i)-(iii), (v) .............................................................................9

12 U.S.C. § 1821(d)(13)(D) ......................................................................................9, 17, 20

12 U.S.C. § 1821(j) .......................................................................................................9, 22

12 U.S.C. § 1823(c)(4)(A) ............................................................................................4, 13

12 U.S.C. § 1823(c)(4)(G) ........................................................................................4, 9, 13

28 U.S.C. § 157(a) ...............................................................................................................6

28 U.S.C. § 157(b)(2)(E) ...................................................................................................18

28 U.S.C. § 157(c)(1) .........................................................................................................20

28 U.S.C. § 157(d) .........................................................................................................6, 14

28 U.S.C. § 2201 *et seq* .....................................................................................................5

28 U.S.C. § 3301 *et seq* ...................................................................................................17

**Other Authorities**

Congress in the Financial Institutions Reform, Recovery, and Enforcement Act of
    1989, Pub. L. No. 101-73, 103 Stat. 183, *reprinted in* 1989 U.S.C.C.A.N. 183 ......................1

## PRELIMINARY STATEMENT

The overarching statutory mission of the Federal Deposit Insurance Corporation (the "FDIC") is to maintain stability and public confidence in the nation's financial system.  When an insured depository institution (in most cases, a bank) fails, the FDIC is ordinarily appointed receiver.  The FDIC, as receiver, assumes responsibility for efficiently maximizing the recovery from the disposition of the failed bank's assets and the resolution of claims in the receivership.  To accomplish these goals, the FDIC, as receiver, takes charge of the failed bank's assets and manages the exclusive, mandatory claims process established by Congress in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183, *reprinted in* 1989 U.S.C.C.A.N. 183 ("FIRREA").  The proceeds of the failed bank's assets are distributed to the receivership's creditors, including depositors, according to priorities set by law.

As discussed further below, on Friday, March 10, 2023, Silicon Valley Bank ("SVB") failed, and the California Department of Financial Protection and Innovation closed SVB and appointed the FDIC, as receiver for SVB ("FDIC-R1").  FDIC-R1 began administering the SVB receivership pursuant to applicable federal law—Title 12, specifically FIRREA and the Federal Deposit Insurance Act ("FDI Act"),  as amended through P.L. 117–263, 64 Stat. 873.  Under the FDI Act, the receiver succeeded to all rights, titles, powers, and privileges of SVB, and became liable for paying valid claims under the Act's provisions for determining claims. 12 U.S.C. §§ 1821(d)(2) and 1821(d)(3)-(d)(13), respectively.

On Friday, March 17, 2023 (the "Petition Date"), SVB Financial Group (the "Debtor"), the holding company for SVB, filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").  FDIC-R1 has not filed a proof of claim in the Debtor's bankruptcy case.

On July 9, 2023, the Debtor filed a complaint (the "Complaint"), against (among others) FDIC-R1, thereby commencing this adversary proceeding (the "Adversary Proceeding") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). A true and correct copy of the Complaint is attached as **Exhibit 1**.

The next day, on July 10, 2023, the Debtor filed three (3) Claims (as defined below) in the SVB receivership, thereby invoking the FIRREA claims process. FDIC-R1 is statutorily tasked with managing the FIRREA claims process for the SVB receivership.[1]

The Complaint, however, is designed to nullify and circumvent the mandatory, exclusive FIRREA claims process—to which the Debtor submitted its Claims. Notwithstanding the Debtor's voluntary invocation of the FIRREA claims process, the Debtor simultaneously asks the Bankruptcy Court to exercise jurisdiction *that it does not possess* to determine the Claims and to issue orders directing payment of the Claims, contrary to Title 12's express jurisdictional prohibitions, procedures, and priorities.

The Debtor's attempt to use the Adversary Proceeding to nullify and circumvent FIRREA raises important (and some novel) issues that require substantial and material consideration of Title 12 to resolve the Adversary Proceeding.  Accordingly, withdrawal of the reference is mandatory under 28 U.S.C. § 157(d).

In addition, for similar reasons, even if mandatory withdrawal is not required (and it is), "cause" exists for permissive withdrawal of the reference.  Although the Debtor phrases its claims as core, most (if not all) of them are non-core.  Rather, the Debtor's claims are predicated on the

---

[1] The Complaint fails to distinguish between the legally separate receiverships of Silicon Valley Bank and Silicon Valley Bridge Bank.  The instant motion is filed by the FDIC, as receiver for Silicon Valley Bank (FDIC-R1).  The FDIC, as receiver for Silicon Valley Bridge Bank, ("FDIC-R2"), will manage the claims process for the Silicon Valley Bridge Bank receivership.

false assumption that its right to payment by FDIC-R1 on account of pre-failure deposits at SVB is undisputed and indisputable and, further, that the Debtor is entitled to immediate payment. That plainly is not the case, as will be more fully addressed in FDIC-R1's motion to dismiss. The determination of the Debtor's claims will turn entirely on non-bankruptcy law, including FDIC-R1's defenses under applicable State law and a liability limitation under Title 12. Finally, Title 12, alone, governs the terms under which the Debtor will receive a distribution from FDIC-R1.

Even assuming that the Bankruptcy Court had jurisdiction to make a receivership claim determination (it does not), it could neither issue a final order nor compel immediate payment. Moreover, Title 12 authorizes a judicial determination of the Claims in only two courts, the United States District Court for the Northern District of California and the United States District Court for the District of Columbia.  The Debtor's election to file its Complaint in the Bankruptcy Court in the Southern District of New York could not be a clearer case of forum shopping.  Withdrawal of the reference will eliminate costly duplicative litigation, promote uniformity of law, and discourage the Debtor's forum shopping.

## BACKGROUND

**A.    The Collapse of Silicon Valley Bank, the Systemic Risk Exception, and Commencement of the Debtors' Case.**

On Friday, March 10, 2023, the depositors ran on SVB.  SVB did not have enough money to cover depositors' withdrawals and ultimately failed.  It was the second-largest bank failure in U.S. history and the largest since Washington Mutual failed in 2008.  As a result, on March 10, 2023, the California Department of Financial Protection and Innovation closed SVB and appointed FDIC-R1 as receiver for SVB.

Two days later, on March 12, 2023, the Secretary of the Treasury authorized application of the "Systemic Risk Exception" to the least-cost resolution provision of the FDI Act.  The Systemic Risk Exception exempts the FDIC from the statutory requirement that it resolve a failed insured depository institution in a manner that "is the least costly to the Deposit Insurance Fund" and provides the FDIC with the <u>discretion</u> to take any action it deems necessary to avoid or mitigate "serious adverse effects on economic conditions or financial stability."   12 U.S.C. §§ 1823(c)(4)(A) and (G).  The application of the Systemic Risk Exception to SVB's receivership was novel.  The Systemic Risk Exception had rarely been invoked and had *never* applied to a bank failure in which the FDIC was appointed receiver.  Five days later, on the Petition Date, the Debtor filed its voluntary petition for relief with the Bankruptcy Court.

**B.      The Complaint and its Claims for Payment from FDIC-R1.**

On July 9, 2023, the Debtor filed the Complaint.  In Count II of the Complaint, the Debtor asserts a purported turnover claim under section 542 of the Bankruptcy Code against FDIC-R1 and requests an order requiring FDIC-R1 immediately to "turnover" the "Deposit Account" to the Debtor.  Compl. ¶¶ 74-79.[2]  The Debtor alleges that, as of the Petition Date, the three accounts held in the Debtor's name at SVB totaled $1,933,805,708.13 (the "<u>Deposit Claim</u>").  Compl. ¶¶ 45-46.  The Debtor claims that FDIC-R1 is wrongfully withholding the payment of the Deposit Claim based on FDIC-R1's insistence that the Debtor's claim for payment of the Deposit Claim proceed through the claims process established under 12 U.S.C. § 1821(d)(3)-(13).  Compl. ¶ 2.  The Debtor describes Count II as an "action for payment from" FDIC-R1.  *See, e.g.*, Compl. ¶ 75

---

[2] Count I of the Complaint, which is asserted only against the FDIC in its corporate capacity, alleges that by invoking the "Systemic Risk Exception" under 12 U.S.C. § 1823(c)(4)(G), the FDIC-C guaranteed immediate payment of the full balance of the uninsured deposits (seemingly without regard to the express statutory limitation on the FDIC's liability, the FIRREA claims process, and FDIC-R1's defenses).

(the Deposit Claim is "a debt FDIC-R owes to the Debtor's estate"); Compl. ¶ 76 (alleging that FDIC-R1 did not acquiesce to the Debtor's "demand[ ] that the FDIC-R pay to the Debtor the full amount of its Account Funds."); and Prayer for Relief at ¶ "(c)" (requesting that the Court "require FDIC-R immediately to pay to the Debtor the full amount of the [Deposit Claim]").  The Debtor seeks immediate payment of the Deposit Claim.  Compl. ¶ 1.

Count III of the Complaint alleges that FDIC-R1 (and, it would appear, FDIC, both in its corporate capacity ("<u>FDIC-C</u>") and as receiver for the bridge bank) violated the automatic stay under section 362 of the Bankruptcy Code.  Compl. ¶ 80-83.  The Debtor alleges that FDIC-R1 violated the automatic stay by "refusing to release any of the Account Funds."  Compl. ¶ 83.

Count IV of the Complaint seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  Compl. ¶¶ 84-91.  The Debtor asks the Bankruptcy Court to determine the claims and rights of FDIC-R1 with regard to its ability to setoff claims of FDIC-R1 against the Deposit Claim.  Compl. ¶¶ 84-91.  As to FDIC-R1, the Debtor seeks declaratory relief in sequential alternatives:  (i) a declaration that FDIC-R1 has no claim or right of setoff against the Deposit Account or (ii) a declaration that any such right of setoff is limited to amounts for which there is mutuality of obligation between the Debtor and FDIC-R1.  Compl. ¶ 90.  To the extent the Bankruptcy Court does not grant the foregoing relief, as to FDIC-R1, the Debtor asks the Bankruptcy Court to make a determination as to the amount of any setoff FDIC-R1 may have against the Debtor's Deposit Claim and "declare" that FDIC-R1 "immediately turn over any excess funds to the Debtor."  Compl. ¶ 91.

## C.   The Debtor Invoked FIRREA's Mandatory, Exclusive Claims Process.

Pursuant to its statutory obligation to manage FIRREA's mandatory, exclusive claims process, FDIC-R1 established July 10, 2023, as the claims bar date.  *See* 12 U.S.C. § 1821(d)(3)(B)-(C).  Before the bar date expired, the Debtor filed three (3) claims relating to SVB

and FDIC-R1, one in the amount of $1.9 billion for unremitted deposit account funds, a second in

an unidentified amount for deferred compensation plan participants (the "<u>Deferred Compensation

Claim</u>"), and a third in a contingent and unliquidated amount on account of alleged actions or

omissions of FDIC-R1 (such as allegedly selling the assets of SVB for less than their value) (the

"<u>Damages Claim</u>").[3]  The claim for unremitted deposit account funds filed in, and subject to, the

FIRREA claims process is based on the same allegations relating to the Deposit Claim as Counts

II, III and IV of the Complaint.

## ARGUMENT

**A.**    **Withdrawal of the Reference Is Mandatory Because Resolution of the Adversary
Proceeding Requires Consideration of Many Substantial Title 12 Issues (Some of
Which Are Novel).**

While district courts have original jurisdiction over "all civil proceedings" arising under,

arising in, or related to cases under the Bankruptcy Code, a district court may refer proceedings to

a bankruptcy judge in certain instances.  *See* 28 U.S.C. § 157(a).  The United States District Court

for the Southern District of New York has referred such proceedings to the Bankruptcy Court

pursuant to the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.).

Section 157(d) of title 28 of the United States Code, however, provides that a district court,

upon timely motion, "***shall*** withdraw" the reference of a proceeding "if the court determines that

resolution of the proceeding requires consideration of both title 11 and other laws of the United

States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d)

(emphasis added).  Mandatory withdrawal exists "to assure that an Article III judge decides issues

calling for more than routine application of [federal laws] outside of the Bankruptcy Code."  *Enron*

---

[3] The Debtor filed identical proofs of claim against FDIC-R2, the receivership for Silicon Valley Bridge
Bank, N.A.

*Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, 2004 U.S. Dist. LEXIS 23868, (S.D.N.Y. Nov. 22, 2004) (alteration in original).

The Second Circuit held that withdrawal of the reference is required "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for resolution of the proceedings." *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990). "To satisfy the substantial-consideration test, the issues of non-bankruptcy law raised by the proceeding need not be unsettled or involve matters of 'first impression.'" *Enron,* 2004 U.S. Dist. LEXIS 23868, *7-8. What is important is "the *degree* to which the bankruptcy judge would have to consider the federal [non-bankruptcy] law." *Id.* (quoting *McCrory Corp. v. 99 [cents] Only Stores (In re McCrory Corp.),* 160 B.R. 502, 505 (S.D.N.Y. 1993) (emphasis and alteration in *Enron*)). Withdrawal of the reference is mandatory when a proceeding would require "the bankruptcy court to engage itself in the intricacies" of non-bankruptcy law, as opposed to "routine application" or "straightforward application of a federal statute to a particular set of facts." *In re Enron Corp.*, 388 B.R. 131, 136 (S.D.N.Y. 2008).

Here, mandatory withdrawal of the reference is required because the Adversary Proceeding involves "substantial and material" consideration of Title 12. The Bankruptcy Court would have to probe deeply into the intricacies of FIRREA. As discussed in more detail in the *Memorandum of Law of The Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank in Support of its Motion to Dismiss All Counts Against Such Receiver Pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure* [Adv. Docket No. 28] (the "Memorandum of Law"), resolution of the Adversary Proceeding involves (among others) the following contested and dispositive issues (some of which are novel) under Title 12:

| Section of Title 12, U.S. Code | FIRREA ISSUE | Paragraph(s) of Complaint Implicating FIRREA Issue | Page(s) of Memorandum of Law Addressing Issue |
|---|---|---|---|
| § 1821(d)(3)-(13) | Does Title 12 require that the FDIC-R's defenses to liability (including claims that could support setoff) be addressed in the FIRREA claims process—which the Debtor *has* invoked—instead of the Bankruptcy Court's claims process—which FDIC-R1 has *not* invoked? | Compl. ¶¶ 13-15 & 23 | Memorandum of Law at p. 8 |
| § 1821(d)(5)(A) | Does the exclusive and mandatory grant of authority to the FDIC-R1 to use up to 180 days to determine the Debtor's claims prevent FDIC-R1 from being forced to "turnover" funds under Section 542 of the Bankruptcy Code ? | Compl. ¶¶ 75-79 | Memorandum of Law at pp. 8 & 20-21 |
| § 1821(d)(10)(A) | Can FDIC-R1 be forced to immediately to pay the Debtor's unallowed claims when section 1821(d)(10)(A) gives FDIC-R1 the discretion to pay allowed claims to the extent funds are available? | Compl. ¶¶ 18-19 & 75-79 | Memorandum of Law at 20-21 |
| § 1821(d)(10)(B) | Can FDIC-R1 be forced to immediately pay the Debtor's unproven claims when section 1821(d)(10)(B) gives FDIC-R1 the discretion to pay "at any time" dividends on "proved claims?" | Compl. ¶¶ 18-19 & 75-79 | Memorandum of Law at p. 20 |
| § 1821(d)(11)(A)(i)-(iii) and (v) | Can the Debtor avoid the creditor priority scheme set forth in section 1821(d)(11)(A)(i)-(iii) and (v) and "jump the line" by forcing "immediate" payment, as demanded in the Complaint? | Compl. ¶¶ 18-19 & 75-79 | Memorandum of Law at pp. 20-21 |
| § 1821(d)(13)(D) | Can a court exercise jurisdiction over the Debtor's claims against FDIC-R1 when section 1821(d)(13)(D) provides that "*no court*" has jurisdiction unless the Debtor exhausts the FIRREA claims process? | Compl. ¶¶ 13-15 & 19 | Memorandum of Law at pp. 2 & 9 |

| Section of Title 12, U.S. Code | FIRREA ISSUE | Paragraph(s) of Complaint Implicating FIRREA Issue | Page(s) of Memorandum of Law Addressing Issue |
|---|---|---|---|
| § 1821(d)(13)(D) | Can a party's alleged consent via conduct confer jurisdiction on the Bankruptcy Court where such jurisdiction has explicitly been withdrawn by section 1821(d)(13)(D)? | Compl. ¶¶ 15, 22 & 82 | Memorandum of Law at pp. 2 & 9-10 |
| § 1821(d)(6)(A) | Can the Bankruptcy Court or the District Court for the SDNY exercise jurisdiction over the Debtor's claims when section 1821(d)(6)(A) grants jurisdiction to hear the claims to only the District Court for the Northern District of California (SVB's principal place of business) or the District of Columbia? | Compl. ¶ 24 | Memorandum of Law at pp. 22-23 |
| § 1823(c)(4)(G) | In a matter of first impression, can a court order the immediate payment of claims when the Systemic Risk Exception does not impose any deadlines or obligation for the FDIC in any capacity to make payment to a creditor? | Compl. ¶¶ 36-38 & 49-50 | Memorandum of Law at pp. 19-20 |
| § 1821(i)(2) and (3) | In a matter of first impression in the bank receivership context, can a court order the immediate payment of uninsured deposit liabilities of $1.9 billion if that amount exceeds FDIC's maximum liability under section 1821(i)(2), the calculation of which excludes any funds provided under the Systemic Risk Exception? | Compl. ¶¶ 1, 18-19 & 75-79 | Memorandum of Law at pp. 22-25 |
| § 1821(j) | Does section 1821(j) preclude the Bankruptcy Court from ordering FDIC-R1 to make "immediate" payment to the Debtor or to deposit funds in an interest-bearing account? | Compl. ¶ 19 & Prayers for Relief | Memorandum of Law at pp. 15-17 |
| § 1821(j) | Does section 1821(j) preclude the Debtor's requests for "declaratory relief"? | Compl. ¶¶ 19 & 85-90 | Memorandum of Law at pp. 17-18 |

A true and correct copy of the Memorandum of Law is attached as **Exhibit 2**.  A cursory review of the number of Title 12 sections as compared to the Bankruptcy Code (Title 11) sections listed in the table of authorities in the Memorandum of Law leads to one inescapable conclusion:  The crux of the dispute presented in the Memorandum of Law is based on, and will be determined under Title 12, not the Bankruptcy Code.

Because the Debtor filed its Complaint notwithstanding the explicit withdrawal of jurisdiction over claims that have not been exhausted through the FIRREA claims process established by Congress, there is no way to avoid the dispositive FIRREA issues implicated by the Complaint.  Simply put, Congress designed the FIRREA claims process to be "exclusive and mandatory."  *Frazier v. Colonial Bank*, 2011 U.S. Dist. LEXIS 22630, *7 (M.D. Ala. Feb. 16, 2011); *see St. Paul Mercury Ins. Co. v. Montgomery Cnty. Bankshares, Inc.*, 2014 U.S. Dist. LEXIS 185050, *10 (Bankr. N.D. Ga. Dec. 30, 2014) (referring to "the exclusive nature of the administrative claims process" under FIRREA).  Moreover, Congress conferred on FDIC-R1 the exclusive power to manage the FIRREA claims process for the SVB receivership.  *See Joyce v. Devastey*, 2013 U.S. Dist. LEXIS 6392, *5 (E.D. Pa. Jan. 16, 2013) ("Under the FIRREA, management of the claims process is committed to the exclusive power and discretion of the Receiver, and the Receiver's management of the claims process is a core function of the Receiver. *See* 12 U.S.C. § 1821(d)(3)(A).").

Title 12 provides a comprehensive scheme for resolution and liquidation of failed banks.[4]  That comprehensiveness has resulted in the mandatory withdrawal of the reference in proceedings

---

[4] Congress expressly provided that banks, such as SVB, cannot be resolved under Title 11.  11 U.S.C. § 109(b)(2) ("A person may be a debtor under chapter 7 of this title only if such person is not— . . . (2) a . . . bank[.]"); 109(d) ("Only . . . a person that may be a debtor under chapter 7 of this title (except a stockbroker or a commodity broker), and an uninsured State member bank . . . may be a debtor under

where important FIRREA issues were raised.  *See, e.g., CM Capital Servs., LLC v. Stewart Title of Nev.*, 2010 U.S. Dist. LEXIS 118011, *6 (D. Nev. Nov. 5, 2010) ("cases involving FIRREA require mandatory withdrawal of the reference").  Notably, mandatory withdrawal of the reference has been required in the FIRREA context based on one of the many FIRREA issues implicated by the Complaint.  In *In re Mid America Entertainment Plus, Inc.*, 135 B.R. 419 (Bankr. D. Kan. 1991), the court held as follows:

> "The bankruptcy court could not properly decide the trustee's adversary complaint without first determining it had subject matter jurisdiction in light of 12 U.S.C. § 1821(d)(13)(D). The [FDIC-R's] jurisdiction defense appears to be a central issue in the adversary action.  A decision on it will require assessing whether Congress intended FIRREA's administrative remedies to be a prerequisite for the bankruptcy court's jurisdiction over many of the actions and disputes involving the [FDIC-R]. Other than the one bankruptcy court decision, this issue has not been addressed in a published judicial opinion.  A decision on this issue could be dispositive of this adversary action as it relates to subject matter jurisdiction. Moreover, a decision on this issue could serve an important role as precedent, at least for this district, on the scope of a non-bankruptcy statute and its impact on bankruptcy court jurisdiction. For all of these reasons, the district court believes this is an appropriate case for mandatory withdrawal."

*Id.* at 422-23; *Lubin v. Cincinnati Ins. Co. (In re Lubin)*, 411 B.R. 801, 804 (N.D. Ga. 2009) (mandatory withdrawal of reference required for FIRREA issues); *Blvds. Shops & Offices at Scenic, LLC v. Blvds. Shops & Offices at Scenic, LLC*, 2010 U.S. Dist. LEXIS 151100, *3 (N.D. Ga. Sept. 21, 2010) (mandatory withdrawal of reference required where "Defendant moves this Court to withdraw plaintiff's adversary proceeding against it from the Bankruptcy Court to the present Court on the ground that plaintiff's claims are substantially controlled by . . . FIRREA");

---

chapter 11 of this title"); 101(54)(A) ("uninsured State member bank" means "a State member bank . . . the deposits of which are not insured by the Federal Deposit Insurance Corporation").  It is "'difficult to imagine a more clear statement of congressional intent' that the Code's provisions are not to be applied in the reorganization or liquidation of a banking institution."  *In re Deltacorp, Inc.*, 111 B.R. 419, 421 (Bankr. S.D.N.Y. 1990) (quoting *In re Peoples Bankshares, Ltd.*, 68 B.R. 536, 540 (Bankr. N.D. Iowa 1986)). FIRREA, not the Bankruptcy Code, governs the liquidation of SVB, including the determination of the Deposit Claim (as well the other Claims) asserted against SVB's receivership.

*see also Vieira v. Anderson (In re Beach First Nat'l Bancshares),* 702 F.3d 772, 775 (4th Cir. 2012) (noting that "the bankruptcy court stayed the proceedings, and the district court granted the motion to withdraw the reference" in dispute involving FIRREA issues);[5] *FDIC v. Amtrust Fin. Corp. (In re Amtrust Fin. Corp.)*, 694 F.3d 741, 749 (6th Cir. 2022) ("The FDIC also moved to withdraw the reference as to this motion, which the district court granted."); *see also Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Securities LLC*, 486 B.R. 579, 583 (S.D.N.Y. 2013) (withdrawal of the reference was "mandatory because a determination of whether the [plaintiffs'] independent claims against the [defendants] can become property of the BLMIS estate necessarily involves a significant interpretation of federal law outside the Bankruptcy Code");

In this Adversary Proceeding, as set forth above, there are many more important FIRREA issues implicated by the Complaint and addressed in the Memorandum of Law.  Adjudication of those issues requires substantial and material consideration of at least the following sections of Title 12:  §§ 1821(d)(3)(A); 1821(d)(5), 1821(d)(6), 1821(d)(3)(A), 1821(d)(5)(A), 1821(d)(6)(A), 1821(d)(10)(A), 1821(d)(10)(B), 1821(d)(11)(A)(i)-(iii) and (v), 1821(d)(13)(D), 1821(i)(2), 1821(i)(3), 1821(j), and 1823(c)(4)(G).  Withdrawal of the reference is mandatory in cases that "require a bankruptcy court judge to engage in significant interpretation, as opposed to simple

---

[5] In *In re CIS Corp.*, 140 B.R. 351 (S.D.N.Y. 1992) a district court refused to withdraw the reference for an adversary proceeding initiated against the FDIC by a bankruptcy trustee.  The FDIC asserted that administrative remedies had not been exhausted as required by FIRREA Section 1821(d).  In refusing to withdraw the reference the District Court stated that withdrawal was unnecessary because the evaluation of FIRREA was straightforward and only involved whether administrative remedies had been exhausted, and that withdrawal was not necessary simply because of a potential FIRREA jurisdictional defense.  *CIS* is inapposite to the case at hand because, unlike *CIS,* where the underlying issue was the validity of a security interest, the Debtor's entire case revolves around its novel (and fatally flawed) theory that, by invoking the Systemic Risk Exception  under 12 U.S.C. § 1823(c)(4)(G), the FDIC guaranteed payment of the Debtor's uninsured deposits.  If the Court does not dismiss the Complaint in its entirety, a resolution will require substantive and material consideration of not only Section 1823(c)(4)(G), but also 12 U.S.C. § 1821(i)(2) and (3) and FIRREA's provisions addressing claims distributions and priorities.

application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991).

Furthermore, in 1991, Congress enacted the "Systemic Risk Exception" in Section 1823(c)(4)(G) of Title 12. Prior to SVB's failure, the Systemic Risk Exception was never applied to the resolution of a bank in an FDIC receivership. The Debtor asks the Court to compel the FDIC-C and FDIC-R1 to "immediately" satisfy the receiver's uninsured-deposit liability by seeking funding from the Deposit Insurance Fund ("DIF"), pointing to application of the Systemic Risk Exception to SVB's failure. That novel attempt is a matter of first impression–no court has ever considered, much less decided, whether the Systemic Risk Exception entitles an uninsured depositor (like the Debtor) to circumvent the FIRREA claims process and distribution priorities in order to obtain immediate payment of its alleged Deposit Claim.

The Debtor makes the novel argument that, by invoking the Systemic Risk Exception, "the FDIC guaranteed all deposits at SVB – insured and uninsured – such that all would be repaid in full." Compl. ¶ 35. The Debtor's novel assertion conflicts with the plain language of Section 1823(c)(4)(G), which neither states nor implies that use of the Systemic Risk Exception is a guaranty of uninsured deposits or other claims. Instead, when invoked, it merely provides the FDIC with the discretion to "take other action or provide assistance" —otherwise unavailable under the "least cost test" in Section 1823(c)(4)(A) — for the purpose of winding up a failed bank. 12 U.S.C. §§ 1823(c)(4)(A) and (G). Despite the Debtor's novel demand for immediate payment from the DIF, nothing in Section 1823(c) or any other provision of Title 12 requires FDIC-R1 (or FDIC-C) to request any funds from the DIF to pay an uninsured deposit claim, let alone to do so immediately and without completion of the FIRREA claims process. Moreover, a court must address the Debtor's novel demand for an order requiring immediate payment in full of the Deposit

Claim based on the Systemic Risk Exception notwithstanding the language of Section 1821(i)(2) of FIRREA, which expressly limits FDIC-R1's liability to an amount determined *without* consideration of funding from the Systemic Risk Exception.  Any additional payments the FDIC may make to claimants are also solely within the FDIC's "discretion," and the FDIC is not "obligated" to make any payment to any claimant, even if it made payments to "other claimant[s] or categor[ies] of claimants." 12 U.S.C. § 1821(i)(3)(A); *see also Lawson v. Fleet Bank of Maine*, 807 F. Supp. 136, 143 n.6 (D. Me. 1992), *aff'd sub nom. Lawson v. F.D.I.C.*, 3 F.3d 11 (1st Cir. 1993) (rejecting plaintiff's argument that FDIC was obligated to pay interest through purchase and assumption agreement, noting that, under 12 U.S.C. § 1821(i)(3), "the FDIC may, in its discretion decide to make additional payments to certain claimants") (emphasis in original). Sections 1821(i)(2) and (3) separate discretionary assistance from a binding legal obligation to individual claimants.  *See Branch v. FDIC*, 825 F. Supp. 384, 413-14 (D. Mass. 1993) ("under [S]ection 1821(i)(2), even if some creditors receive 100% payment on their claims under a purchase and assumption due to FDIC assistance, other *creditors remain entitled only to the amount they would have received had the bank been liquidated, and are thus not entitled to a pro rata distribution from amounts donated by the FDIC*."  *Id.* at 414 (emphasis added)).  Those are important "billion" dollar *FIRREA* issues.

For the foregoing reasons, withdrawal of the reference of this Adversary Proceeding is mandatory pursuant to 28 U.S.C. § 157(d).

**B.**      **Alternatively, the Court Should Withdraw the Reference of this Adversary Proceeding for "Cause."**

The District Court, in its discretion, may withdraw the reference of the Adversary Proceeding "for cause shown."  28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion

of any party, for cause shown."). Section 157(d) does not define "cause." Courts in the Second Circuit consider several factors in deciding whether to withdraw the reference for cause: (1) whether the claim or proceeding is core or non-core; (2) consideration of efficiency; (3) whether the claim is legal or equitable; (4) prevention of forum shopping; and (5) uniformity in the administration of bankruptcy law. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *In re Murphy*, 482 F. App'x 624, 628 (2d Cir. 2012) (same). No single factor is dispositive; rather, efficiency and uniformity are the overriding considerations. *Nw. Airlines Corp. v. City of Los Angeles (In re Nw. Airlines Corp.)*, 384 B.R. 51, 59 (S.D.N.Y. 2008). As set forth below, in light of these determinative factors and the facts surrounding this Adversary Proceeding, the Court should withdrawal the reference for "cause."

      **1.**       **The Debtor's Non-Core Claims Weigh in Favor of Withdrawal of the Reference.**

Whether a claim is core or non-core is relevant to the efficiency and uniformity of the proceedings. *In re Orion Pictures Corp.*, 4 F.3d at 1101. The Complaint purports to involve "core" claims. A core proceeding ("arising under" title 11 or "arising in" a chapter 11 case) involves rights created by bankruptcy law or that could only arise in a bankruptcy case. *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108-09 (2d Cir. 2006); *DeWitt Rehabilitation and Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012) (citing *McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.)*, 160 B.R. 502, 506 (S.D.N.Y. 1993)). In other words, a "proceeding is encompassed within the bankruptcy court's core . . . jurisdiction if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'ship*, 2004 WL 1048239 at *2 (S.D.N.Y. May 7, 2004).

While the Debtor fashions its claims as core under Sections 542 (Count II) and 362 (Count III) of the Bankruptcy Code, courts must look beyond the labels attached to a claim and instead look to the nature of the requested relief.  *See Penson Techs. LLC v. Schonfeld Grp. Holdings LLC (In re Penson Worldwide, Inc.)*, 587 B.R. 6, 15 (Bankr. D. Del.  2018) ("it is necessary to look beyond the 'label' of 'core' into the substance of the proceeding in order to properly apply the governing standards").  Here, the claims asserted by the Debtor are nothing more than claims for payment of uninsured deposit liabilities of the receivership estate.  That is, the Debtor seeks damages from FDIC-R1 for SVB's alleged breach of deposit agreements.  Where an action depends solely on the application of non-bankruptcy law and can exist independently outside of the bankruptcy case, that action is not a core matter.  *See M Fabrikant & Sons, Inc. v. Long's Jewelers  Ltd.*, 2008  U.S. Dist. LEXIS 50247, *7 (S.D.N.Y. June 26, 2008) ("'non-core' proceedings 'involve disputes over rights that . . . have little or no relation to the Bankruptcy Code, do not arise under the federal bankruptcy law and would exist in the absence of a bankruptcy case.'") (internal citations omitted).  The claims asserted by the Debtor arise from the Debtor's contractual relationship with SVB, an entity that is now in a Title 12 receivership.

The Debtor filed the Claims (which include the same allegations as set forth in the Complaint) in the FIRREA claims process.  Those Claims (including FDIC-R1's defenses thereto) will be determined *outside of* the bankruptcy process, as FIRREA requires.  The determination of the Claims necessarily includes consideration of the FDIC-R1's defenses under Title 12 and applicable State law.

Also, whether the Complaint includes "core" or "non-core" matters does not bear its usual relevance in this case.  The Bankruptcy Court lacks any jurisdiction—whether core or non-core—over the Complaint, including (without limitation) Counts II, III and IV asserted against FDIC-R1.

*See* 12 U.S.C. §§ 1821(d)(13)(D) ("no court" has jurisdiction because the Debtor failed to exhaust FIRREA's mandatory, exclusive claims process); 1821(d)(6)(A) (only United States District Courts for the Northern District of California (SVB's principal place of business) or the District of Columbia can address claims disallowed by FDIC-R1); and 1821(j) (prohibiting injunctive relief and other restraints on the FDIC's exercise of its powers and functions as receiver).

Even assuming that the Bankruptcy Court had jurisdiction over the claims set forth in the Complaint (and it does not have jurisdiction), the claims are substantively non-core. As more fully explained below, Count IV's request for declaratory relief on FDIC-R1's potential State law claims – which FDIC-R1 has not filed with the Bankruptcy Court – is inherently non-core. And Counts II and III are based on false assumptions that (a) the amount of the Deposit Claim is undisputed and (b) the Debtor has an immediate right to payment. A determination of the right to payment on the Deposit Claim is non-core and cannot be made by the Bankruptcy Court.

In Count IV, the Debtor seeks (among other things) declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 3301 *et seq*. Actions under the Declaratory Judgment Act are neither core nor reliant on the Bankruptcy Code. *Scott v. Am. Sec. Ins. Co. (In re Scott)*, 572 B.R. 492, 521 (Bankr. S.D.N.Y. 2017). The declaratory relief sought by the Debtor includes declarations that FDIC-R1 has no right of setoff and that the FDIC-R1 should immediately pay the Deposit Claim. Such relief could be granted outside of the bankruptcy case and, therefore, such claims are not "core." *See Kraken Inv. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)*, 475 B.R. 9, 27 (S.D.N.Y. 2012) (core proceedings have "no existence outside of the bankruptcy") (quoting *Binder & Binder, P.C. v. Finnie (In re Finnie)*, 2007 Bankr. LEXIS 1895, *31 (Bankr. S.D.N.Y. May 29, 2007) (internal quotation marks omitted).

In Count II, the Debtor seeks an order requiring FDIC-R1 to "turnover" funds (which do not exist) under Section 542 of the Bankruptcy Code.  A valid Section 542 claim would constitute a "core" proceeding "arising under" title 11.  *See* 28 U.S.C. § 157(b)(2)(E).  However, the Debtor's use of section 542 is *not* as a valid turnover claim, but rather as a non-core state law breach of contract claim.  *See, e.g., In re Se. Materials, Inc.*, 467 B.R. 337, 354 (Bankr. M.D.N.C. 2012) (when "an adversary proceeding presents a bona fide dispute as to liability, the matter cannot be viewed as a turnover proceeding").

Section 542(b) of the Bankruptcy Code provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under [§] 553 of this title against a claim against the debtor." 11 U.S.C. § 542(b).  Even putting aside defensive setoff rights, the Deposit Claim is *not* matured, payable on demand or payable on order because such claim has *not* been allowed in the FIRREA claims process, s*ee* 12 U.S.C. § 1821(d)(3)-(5).  Even if allowed, the Deposit Claim would entitle the Debtor only to a distribution from the SVB receivership at a time determined by FDIC-R1, in its discretion. *See* 12 U.S.C. § 1821(d)(10).  Here, and throughout the Complaint, the Debtor conflates an open bank's obligation to a depositor with the wholly different obligation of FDIC-R1 to (a) determine claims under the mandatory FIRREA claims process and (b) make distributions on allowed claims from available funds in the receivership estate at the appropriate time.

"[A]n action should be regarded as a turnover proceeding only when no legitimate dispute over what is owed to [the] debtor exists."  *Weiner's, Inc. v. T.G. & Y. Stores Co.*, 191 B.R. 30, 32 (S.D.N.Y. 1996).  A claim in dispute as to existence or amount is not core.  *Id.*  To consider such a claim as core "would unconstitutionally undermine core/non-core distinction."  *Id.* (citing *Orion*

*Pictures Corp. v. Showtime Networks* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1102 (2d Cir. 1993), *cert. dismissed,* 511 U.S. 1026 (1994)).

In addition, under Title 12, the liability of FDIC-C or FDIC-R1 is determined without regard to any funds made available under the Systemic Risk Exception.  Specifically, Section 1821(i)(2) of Title 12 of the U.S. Code limits the FDIC's "maximum liability" (in any capacity) to the amount that the Debtor would have received if there had been no invocation of the Systemic Risk Exception.  *See* 12 U.S.C. § 1821(i)(2).  Section 1821(i)(2) operates to prohibit a court from imposing liability on the FDIC for an amount in excess of what the claimant would have received if FDIC-R1 liquidated the bank *without* exercising its discretion to provide assistance after invoking the systemic risk exception.  *See Branch*, 825 F. Supp. at 413-14.  Accordingly, while the FDIC can exercise its discretion to pay the Debtor more than the unliquidated maximum liability established by section 1821(i)(2), no court can order it to do so. 12 U.S.C. § 1821(i)(3). The FDIC's exercise of its discretion is unaffected by any provision of the Bankruptcy Code. "Notwithstanding any other provision of Federal or State law, or the constitution of any State, the Corporation shall not be obligated, as a result of having made any such payment or credited any such amount to or with respect to or for the account of any claimant or category of claimants, to make payments to any other claimant or category of claimants." *id.*

Finally, "The word 'turnover' . . . implies action far more ministerial than is required in these circumstances." *Weiner's*, 191 B.R. at 32.  Here, the Debtor's right to immediate payment of any amount, let alone the full Deposit Claim, from FDIC-R1 is disputed.  Therefore, Count II is a non-core claim despite its label as a section 542 turnover action.

Count III is titled as a core claim, for violation of the automatic stay, but the actual facts pleaded demonstrate the Bankruptcy Court's lack of jurisdiction. The Debtor's legal predicate for

a stay violation is that FDIC-R1 was holding "funds" for the Debtor's benefit on the Petition Date. It was not.  Rather, on the Petition Date the Debtor possessed, but had not yet asserted, a claim against FDIC-R1 based on uninsured deposit liabilities of the failed SVB.  The Debtor submitted the Deposit Claim but the 180-day determination period has not passed.  *See* 12 U.S.C. § 1821(d)(5)(A)).  Because the Debtor has not exhausted the FIRREA claims process, no court currently has jurisdiction over that Deposit Claim. 12 U.S.C. § 1821(d)(13)(D).  The Debtor's bankruptcy filing did not alter or enhance its rights.  To obtain any payment on its claim, the Debtor was and continues to be bound by the FIRREA claims process.  The Bankruptcy Court does not have core jurisdiction over the allowance or payment of a FIRREA claim.

Even if the Debtor's Complaint involved any core claim, "[a]djudicating all of the claims, both core and non-core, in the district court eliminates the prospect of an appeal from the bankruptcy court's adjudications of core claims and dispenses with the need for the district court to conduct a *de novo* review of proposed findings and conclusions of the bankruptcy court after a trial in the bankruptcy court as to non-core claims."  *Mirant Corp. v. The S. Co.,* 337 B.R. 107, 122 (N.D. Tex. 2006); *see also FDIC v. Amfin Fin. Corp.*, 2011 U.S. Dist. LEXIS 60297, *3-4 (N.D. Ohio June 6, 2011) (noting that the court withdrew the reference of core proceeding under 11 U.S.C. § 365(o) and all proceedings related thereto).

### 2.  Efficiency Weighs in Favor of Withdrawal of the Reference.

The determination of a bankruptcy court on a non-core matter is subject to *de novo* review by the applicable district court.  *See* 28 U.S.C. § 157(c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing

*de novo* those matters to which any party has timely and specifically objected."); *In re Kentile Floors, Inc.,* 1995 WL 479512, *4 (S.D.N.Y. 1995) (because the claims are "non-core, the bankruptcy court's determinations would be subject to de novo review by this court").

Thus, the substantive non-core nature of the Debtor's claims favors withdrawal of the reference on grounds of expedition and efficiency. *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 467 (S.D.N.Y. 2011) ("where the Bankruptcy Court lacks final adjudicative authority, the remaining . . . considerations will often tend to point toward withdrawal . . . [because] in a given case unnecessary costs could be avoided by a single proceeding in the district court").

### 3. The Legal Nature of the Relief Sought by the Debtor Weighs in Favor of Withdrawal of the Reference.

Where the "underlying nature of the claims is legal, not equitable, this leads [a] Court to find that . . . withdraw[al] of the reference should be granted." *Kirschenbaum v. Fed. Ins. Co. (In re EMS Financial Services, LLC)*, 491 B.R. 196, 205 (E.D.N.Y 2013). Here, on all counts, the Debtor seeks payment of its Deposit Claim. *See* Compl. ¶ 1; *see also, e.g.,* Compl. ¶ 75 (the Deposit Claim is "a debt FDIC-R owes to the Debtor's estate"); and Prayer for Relief at ¶ "(c)" (requesting that the Court "require FDIC-R immediately to pay to the Debtor the full amount of the [Deposit Claim]"). Such demands for monetary payment are, by nature, legal (not equitable) claims. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476 (1962) ("Petitioner's contention . . . is that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal. We agree with that contention").

The declaratory relief in Count IV does not change the legal nature of the Complaint. "Declaratory relief is not inherently legal or equitable; rather, its character depends on that of the underlying action." *Carvel v. Ross*, 2011 U.S. Dist. LEXIS 25203, *46-47 (S.D.N.Y. Feb. 16,

2011); *Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan*, 2004 U.S. Dist. LEXIS 26070, *40-41 (S.D.N.Y. Dec. 29, 2004); *see also Orion*, 4 F.3d at 1103 ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action.") (internal quotation marks omitted) (quoting *Simler v. Conner*, 372 U.S. 221, 223 (1963) (*per curiam*)). Here, as indicated above, the Debtor's consistent refrain is its demand for payment of the Deposit Claim. *See, e.g.,* Prayer for Relief at ¶ "(c)."  Therefore, Count IV is legal in nature.

### 4.    Withdrawal of the Reference Would Discourage the Debtor's Forum Shopping.

The Debtor's filing of the Adversary Proceeding in the Bankruptcy Court was an exercise in extreme forum shopping.  The Debtor seeks to employ the Adversary Proceeding to nullify and circumvent the "exclusive and mandatory" FIRREA claims process.  *Frazier*, 2011 U.S. Dist. LEXIS 22630, *7.  As noted above, part of that process involves FDIC-R1's consideration of its defenses, which the Debtor seeks to restrict by obtaining a Bankruptcy Court directive to FDIC-R1 about potential defensive setoff rights.  FDIC-R1 has not filed a claim in the Bankruptcy Court and cannot be compelled to do so to preserve its setoff rights.  *See, generally, Geltzer v. Bloom (In re Silverman Laces, Inc.)*, 404 B.R. 345, 365-66 (Bankr. S.D. N.Y. 2009) ("The clear majority and better view . . . is that filing a proof of claim is not a prerequisite to asserting an otherwise valid setoff"); *see, also*, 12 U.S.C. § 1821(j) ("no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.")

In addition to violating FIRREA's jurisdictional provisions and limitations on the Bankruptcy Court's authority, the Complaint violates FIRREA's provision conferring jurisdiction only on *certain* District Courts after the FDIC disallows a claim.  Section 1821(d)(6)(A) provides that after—but not before—any of the Claims are disallowed the Debtor may file suit *only* in the

United States District Court for the District of Columbia or the Northern District of California (the location of SVB's principal place of business).  *See* 12 U.S.C. § 1821(d)(6)(A).  The Bankruptcy Court is not an appropriate forum under section 1821(d)(6)(A).

Accordingly, the Court should withdraw the reference to discourage forum shopping and blatant violation of multiple statutes.

### 5.     Uniformity in the Administration of Bankruptcy Law (and FIRREA) Supports Withdrawing the Reference.

The Adversary Proceeding does not involve any meaningful substantive issues of bankruptcy law.  Each count in the Complaint is designed to further the Debtor's ultimate goal of recovering the Deposit Claim—which is pending in the FDIC-R1's claims process along with the Deferred Compensation Claim and the Damages Claim.  There is no threat to the uniform application of substantive bankruptcy law if the reference is withdrawn.  *In re Coudert Bros.,* 2011 WL 7678683, *7 (S.D.N.Y. Nov. 23, 2011) (since "the claims . . . do not raise substantive issues of bankruptcy law[,] [m]aintaining the reference is . . . not necessary to promote the uniform application of the law").

Accordingly, the factors relevant to permissive withdrawal of the reference weigh heavily in favor of withdrawing the reference of the Adversary Proceeding.

### <u>CONCLUSION</u>

For the foregoing reasons, FDIC-R1 respectfully requests that this Court enter an order (i) granting the Motion to withdraw the reference (a) as *required* by section 157(d) because resolution of the Adversary Proceeding requires "substantial and material consideration" of Title 12 or (b) in the Court's discretion for "cause" shown under section 157(d); and (ii) granting such further relief to FDIC-R1 as is appropriate.

Dated:  August 11, 2023
        New York, New York

REED SMITH LLP


*/s/ Kurt F. Gwynne*
Kurt F. Gwynne, Esq.
Casey D. Laffey, Esq.
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: kgwynne@reedsmith.com
E-mail: claffey@reedsmith.com


-and-

REED SMITH LLP

Derek J. Baker, Esq. (admitted *pro hac vice*)
1717 Arch Street
Three Logan Square, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: dbaker@reedsmith.com

-and-

REED SMITH LLP

Keith M. Aurzada, Esq. (admitted *pro hac vice*)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469)-680-4200
Facsimile: (469) 680-4299
E-mail:  kaurzada@reedsmith.com

*Counsel to the Federal Deposit Insurance*
*Corporation, as Receiver for Silicon Valley Bank*

Of Counsel:

Jeffrey Schmitt, Senior Counsel
Nicholas Katsonis, Counsel
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive, Room VS-D-7066
Arlington, Virginia 22226
Tel.: (703) 562-2089
jschmitt@fdic.gov
nkatsonis@fdic.gov

Laura Fontaine, Senior Attorney
Federal Deposit Insurance Corporation
Dallas Regional Office
600 North Pearl Street, Suite 700
Dallas, TX 75201
Tel: (972) 761-8227
lfontaine@fdic.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11 day of August, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CMF/ECF.  I also certify that the foregoing document is being served this day via transmission of Notice of Electronic Filing generated by CM/ECF on all parties of record.

*/s/ Kurt F. Gwynne*
Kurt F. Gwynne
