UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                                    :

SVB FINANCIAL GROUP,                              :

                        Plaintiff,                  :

                      -v-                                :               23 Civ. 7218 (JPC)

FEDERAL DEPOSIT INSURANCE CORPORATION, in  :               <u>OPINION AND ORDER</u>
its Corporate Capacity, and FEDERAL DEPOSIT      :
INSURANCE CORPORATION, as Receiver for Silicon  :
Valley Bank and Silicon Valley Bridge Bank, N.A.,   :

                    Defendants.               :

-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Plaintiff SVB Financial Group ("SVB Group") requests a stay of this action pending further developments in parallel actions that it commenced in the Northern District of California. Defendants oppose the request. For the reasons that follow, the Court stays this case until further order of the Court.

## I. Background

       The Court assumes the parties' familiarity with the facts and procedural history of this matter and recites the background here only as relevant to the instant motion. On March 10, 2023, Silicon Valley Bank ("SVB") failed after experiencing a run on deposits and was placed into receivership administered by the Federal Deposit Insurance Corporation (the "FDIC"). A week later, on March 17, 2023, SVB Group, the parent company of SVB, filed for bankruptcy in this District under Chapter 11 of the Bankruptcy Code. *See In re SVB Fin. Grp.*, No. 23-10367 (Bankr. S.D.N.Y.), Dkt. 1. On July 9, 2023, SVB Group initiated an adversary proceeding in bankruptcy court by filing a four-Count Complaint against Defendants. *See SVB Fin. Grp. v. Fed. Deposit*

*Ins. Corp.*, No. 23-1137 (MG) (Bankr. S.D.N.Y.) ("Adversary Proceeding"), Dkt. 1 ("Complaint"). In the Complaint, SVB Group seeks turnover of $1,933,805,708—allegedly held in deposit accounts at SVB before it was placed in receivership (the "Account Funds")—from the FDIC in its corporate capacity as insurer of qualifying bank deposits ("FDIC-C") under Section 542 of the Bankruptcy Code, *id.* ¶¶ 65-73, alternatively seeks turnover of the Account Funds from the FDIC as receiver for SVB ("FDIC-R1") and as receiver for the bridge bank that was stood up after SVB failed ("FDIC-R2"; collectively with FDIC-C and FDIC-R1, "Defendants") also under Section 542, *id.* ¶¶ 74-79, alleges that Defendants violated the automatic bankruptcy stay by transferring and refusing to release the Account Funds, *id.* ¶¶ 80-83, and seeks a declaration that Defendants possess no claim or right that would permit their exercise of setoff rights with respect to the Account Funds, or, in the alternative, a declaration that any setoff right is "limited to amounts for which there is a mutuality of obligation" between SVB Group and Defendants, *id.* ¶ 90.

On August 11, 2023, Defendants moved to dismiss the Complaint before the bankruptcy court, arguing, *inter alia*, that the court lacked subject matter jurisdiction because SVB Group had failed to exhaust certain administrative claims processes under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183, and further that, even upon exhaustion, challenges to denials of these claims could be heard only in the District Court for the Northern District of California (where the depository institution's principal place of business is located) or in the District Court for the District of Columbia. *See* Adversary Proceeding, Dkt. 25 (FDIC-C's memorandum of law in support of its motion to dismiss) at 10-16; *id.*, Dkt. 28 (FDIC-R1's memorandum of law in support of its motion to dismiss) at 18-20; *id.*, Dkt. 32 (FDIC-R2's memorandum of law in support of its motion to dismiss) at 14-19; *see also* 12 U.S.C. § 1821(d)(6)(A) (providing that within sixty days after the FDIC disallows any portion

of a claim filed with the FDIC as receiver, the claimant may file suit "in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia"); *id.* § 1821(f)(4) ("A final determination made by the [FDIC] regarding any claim for insurance coverage shall be a final agency action reviewable in accordance with chapter 7 of title 5 by the United States district court for the Federal judicial district where the principal place of business of the depository institution is located.").

Four days later, on August 15, 2023, FDIC-R1 moved before this Court to withdraw the Adversary Proceeding's reference to bankruptcy court, Dkt. 1, and the other Defendants, FDIC-C and FDIC R-2, joined in that motion, Dkts. 3, 4, 21.  On December 13, 2023, this Court granted the motion and withdrew the reference.  *SVB Fin. Grp. v. Fed. Deposit Ins. Co. (In re SVB Fin. Grp.)*, No. 23 Civ. 7218 (JPC), 2023 WL 8622521, at *8-12 (S.D.N.Y. Dec. 13, 2023).  The motions to dismiss originally filed in the bankruptcy court thus are now pending before this Court. *See* Dkt. 35.

On December 18, 2023, the parties filed a joint status letter in which SVB Group withdrew a request for a preliminary injunction that it had made in the Adversary Proceeding.  *See* Dkt. 36 at 3.  SVB Group also informed the Court that it intended to file suit in the Northern District of California to pursue claims challenging the FDIC-C's "purported administrative denial" of SVB Group's demand for payment of the Account Funds, and further that it anticipated filing suit in either the Northern District of California or the District of Columbia against FDIC-R1 and FDIC-R2, in the event they disallowed the administrative claims that SVB Group had filed on July 10, 2023, "as a protective measure," *see* Adversary Proceeding, Dkt. 28 (FDIC-R1 memorandum of law supporting motion to dismiss), Exh. A (three proofs of claim).  Dkt. 36 at 2.  Because it

expected FDIC-R1 and FDIC-R2 to render decisions on those claims by January 8, 2024 (the end of the 180-day statutory period for claims processing, *see* 12 U.S.C. § 1821(d)(5)(A)), SVB Group proposed notifying Defendants and the Court by January 15, 2024, whether it would seek leave to file an amended complaint or instead request supplemental briefing on the pending motions to dismiss. Dkt. 36 at 2. In that same letter, the parties disagreed on whether discovery should proceed in this matter, with SVB Group seeking to have discovery continue and Defendants seeking a stay of discovery pending resolution of their motions to dismiss. *Id.* at 2-5.

On December 19, 2023, as expected, SVB Group filed a complaint in the United States District Court for the Northern District of California, challenging the FDIC-C's refusal to pay SVB Group the Account Funds under a variety of legal theories. *See generally SVB Fin. Grp. v. Fed. Dep. Ins. Co.*, No. 23 Civ. 6543 (BLF) (N.D. Cal.) (the "FDIC-C Action"), Dkt. 1. In that eight-Count complaint, SVB Group brings claims for, *inter alia*, a declaration that the Account Funds are not subject to 12 U.S.C. § 1821(f), *id.* ¶¶ 105-110, turnover of the Account Funds pursuant to Section 542 of the Bankruptcy Code, *id.* ¶¶ 111-120, violations of the automatic stay under Section 362(a) of the Bankruptcy Code, *id.* ¶¶ 121-123, violations of SVB Group's due process rights, *id.* ¶¶ 124-134, a standalone violation of the Administrative Procedure Act ("APA") related to the FDIC-C's "purported policy pursuant to which it exercises discretion in determining which uninsured deposits of former [SVB] depositors are guaranteed to be paid," *id.* ¶¶ 135-147, and APA review of the FDIC-C's administrative denial of SVB Group's demand for access to or payment of the Account Funds, *id.* ¶¶ 148-161.

The following day, this Court held a status conference at which it first denied SVB Group's request for a preliminary injunction without prejudice in light of SVB Group's withdrawal of that request. Dkt. 39 ("12/20/23 Tr.") at 4:16-22. At that conference, SVB Group elaborated on its

prospective request to amend the Complaint or file supplemental briefing in connection with the pending motions to dismiss, explaining that "there may be facts that are relevant to whether there was a claims process at all that [SVB Group] was required to follow . . . that would affect the jurisdictional motion at issue." *Id.* at 21:11-24.  Finding it prudent to allow SVB Group to wait to decide its next steps in the instant litigation until after it received decisions from FDIC-R1 and FDIC-R2 on its administrative claims, the Court granted SVB Group's proposal to submit by January 15, 2024, a status letter informing the Court "how [it] proposes proceeding" at that juncture, *id.* at 24:25-25:1, and declined to order completion of an outstanding discovery request from SVB Group until consideration of that letter, *id.* at 40:1-4.

In the status letter it filed on January 15, 2024, SVB Group withdrew its request to submit supplemental briefing on the motions and, joined by the three intervenors (the Official Committee of Unsecured Creditors of SVB Financial Group, the Ad Hoc Group of Senior Noteholders, and the Ad Hoc Cross-Holder Group), sought a stay of this action pending further proceedings in the FDIC-C Action and the anticipated actions against FDIC-R1 and FDIC-R2.  Dkt. 41 at 1-3.  On January 18, 2024, Defendants filed a letter opposing a stay.  Dkt. 42.

On March 10, 2024, SVB Group filed another letter, advising that on March 5, 2024, it had filed a complaint against FDIC-R1 and FDIC-R2 in the Northern District of California.  Dkt. 44 at 2; *see SVB Fin. Grp. v. Fed. Dep. Ins. Corp.*, No. 24 Civ. 1321 (BLF) (N.D. Cal.) (the "FDIC-R Action"; collectively with the FDIC-C Action, the "California Actions"), Dkt. 1.  In the FDIC-R Action, SVB Group principally "challenges the wrongful denial of [SVB Group]'s administrative claims to recover [the Account Funds] that were on deposit at the former Silicon Valley Bank . . . at the time it was put into receivership."  FDIC-R Action, Dkt. 1 ¶ 1; *see also id.* ¶¶ 139-207.[1]  In

---

[1] On March 21, 2024, the Honorable Beth Labson Freeman, United States District Judge

particular, SVB Group asserts claims for, *inter alia*, breach of the deposit agreements pursuant to which SVB Group had deposited funds with SVB as depositor, *id.* ¶¶ 139-149, turnover of the Account Funds pursuant to Section 542 of the Bankruptcy Code, *id.* ¶¶ 154-163, violations of the automatic stay under Section 362(a) of the Bankruptcy Code, *id.* ¶¶ 164-167, a declaration that SVB Group was not required to file an administrative claim with FDIC-R1 or FDIC-R2 under Section 1821(d), *id.* ¶¶ 182-189, and violations of its due process rights, *id.* ¶¶ 190-199. SVB Group "also asserts three Counts for relief unrelated to the deposit claims" in that action, *id.* ¶ 1. *See id.* ¶¶ 208-231.

Also in that March 10, 2024 letter, SVB Group, joined by the same three intervenors, reiterated its request for a stay, this time pending further proceedings in both the FDIC-C and FDIC-R Actions, and proposed submission of a joint status report within 180 days. Dkt. 44 at 3-4. Again, Defendants opposed the request for a stay, arguing that SVB Group should dismiss this action voluntarily in light of those pending California Actions or, "[a]bsent voluntary dismissal, the Court should proceed and consider and resolve the motions to dismiss for lack of subject matter jurisdiction." Dkt. 45 at 2.[2]

---

on the Northern District of California, to whom the FDIC-C Action is assigned, granted SVB Group's request to designate the FDIC-R Action as related to the FDIC-C Action. *See* FDIC-C Action, Dkts. 29 (motion), 38 (order).

[2] Based on the public dockets in the FDIC-C and FDIC-R Actions, no party has requested a stay of either action.

## II. Standard of Review

District courts have broad power to stay proceedings, which "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts in this District typically weigh five factors in considering whether to stay an action:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting *Volmar Distribs., Inc. v. N.Y. Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). The Court assesses these five factors "with the principal objective being the avoidance of unfair prejudice." *Consumer Fin. Prot. Bureau v. Credit Acceptance Corp.*, No. 23 Civ. 38 (JHR), 2023 WL 5013303, at *2 (S.D.N.Y. Aug. 7, 2023) (internal quotation marks omitted).

## III. Discussion

### A. SVB Group's Interests

As the party making the instant request, SVB Group plainly has determined that a stay of this action serves its interests and, not surprisingly, points to no prejudice it would suffer from a stay. In its letter filed on March 10, 2024, SVB Group indicates why that is the case—a reason that also applies to several of the other factors. If it is determined that SVB Group was required to file one or more administrative claims to obtain payment of the Account Funds, then the only forums in which it is clear that SVB Group may challenge the denial of those claims are the Northern District of California or the District of Columbia. *See* Dkt. 44 at 3; 12 U.S.C. § 1821(d)(6)(A) (providing that within sixty days after the FDIC disallows any portion of a claim

7

filed with the FDIC as receiver, the claimant may file suit "in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia"); *id.* § 1821(f)(4) ("A final determination made by the [FDIC] regarding any claim for insurance coverage shall be a final agency action reviewable in accordance with chapter 7 of title 5 by the United States district court for the Federal judicial district where the principal place of business of the depository institution is located."). And the issue of whether SVB Group was required to file administrative claims in seeking payment of the Account Funds is squarely before the court in the California Actions. *See* FDIC-R Action, Dkt. 1 ¶¶ 182-189 (SVB Group seeking a declaration that it was not required to file an administrative claim with FDIC-R1 or FDIC-R2 under 12 U.S.C. § 1821(d)); *id.*, Dkt. 33 (FDIC-R1 and FDIC-R2's motion to dismiss) at 8-9 (arguing that, because certain of SVB Group's claims asserted in the FDIC-R Action were not previously raised in the claims filed in the Section 1821(d) claims process, no court has jurisdiction to hear them), 22-24 (challenging the merits of SVB Group's request for a declaration that its claims were not subject to 12 U.S.C. § 1821(d)); FDIC-C Action, Dkt. 1 ¶¶ 105-110 (SVB Group seeking a declaration that the Account Funds are not subject to 12 U.S.C. § 1821(f)); *id.*, Dkt. 25 (FDIC-C's motion to dismiss) at 7-11 (arguing that 12 U.S.C. § 1821(f) bars all but one of SVB Group's "deposit-related claims"). A stay therefore may prevent unnecessary motion practice in this Court, thereby conserving SVB Group's time and resources (as well as those of the Court and Defendants). This first factor thus weighs in favor of granting a stay.

### B. Defendants' Interests and Burden

While they oppose a stay, Defendants have not articulated any burden they would face from a stay of this litigation. Indeed, when asked at the December 20, 2023 conference to identify

the harm that would result from a stay, FDIC-R1's counsel primarily asserted that this Court lacks authority to order a stay because jurisdiction is lacking. *See* 12/20/23 Tr. at 16:11-24. Defendants have reiterated this position in their letters to the Court opposing a stay. *See* Dkt. 42 at 2; Dkt. 45 at 2. The cases they cite to support this position, however, involved situations where the court had already determined that jurisdiction was lacking. *See Lis v. Koninklijke Philips N.V.*, No. 23 Civ. 907 (JLS) (JJM), 2023 U.S. Dist. LEXIS 194561, *11 (W.D.N.Y. Oct. 30, 2023) (recommending that the case be remanded to state court and then noting that "if that recommendation is adopted, the motion for a stay must be denied, because this court lacks the power to stay an action over which it lacks subject-matter jurisdiction" (internal quotation marks omitted)), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 24315 (W.D.N.Y. Feb. 12, 2024); *Protostorm, Inc. v. Foley & Lardner LLP*, No. 18 Civ. 2107 (PKC), 2019 WL 4094882, at *7 (E.D.N.Y. Aug. 29, 2019) (concluding that, because complete diversity between the parties did not exist, the court lacked subject matter jurisdiction, and then finding that the court could not address the parties' competing motions to stay where jurisdiction was lacking); *In re Taub*, 470 B.R. 273, 277 (E.D.N.Y. 2012) ("It is unnecessary for the Court to reach the issue of whether the Debtor has satisfied the standard for the Court to issue a stay pending appeal because it lacks jurisdiction."). No such jurisdictional determination has been made here, and the Court has the authority to issue a stay even with Defendants' motions to dismiss pending. *See Hulley Enters. Ltd. v. Russ. Fed'n*, 211 F. Supp. 3d 269, 277-80 (D.D.C. 2016) (explaining that a court may stay an action without first determining whether it has subject matter jurisdiction); *cf. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.").

9

As Defendants have not identified any burden, this second factor weighs in favor of granting a stay.[3]

### C. The Interests of the Courts, Persons Not Parties to the Litigation, and the Public

The third, fourth, and fifth factors can be considered together in this case, and here, these factors all revolve around the risks associated with duplicative litigation proceeding simultaneously in two courts.

As the parties recognize, the issues presented in the two California Actions substantially overlap with those presented in this case. *See, e.g.*, Dkt. 44 (SVB Group referring to the California Actions as the "Parallel Actions"); Dkt. 45 at 2 (Defendants urging that SVB Group "should not be permitted to litter two separate federal courts, with three actions asserting *all* of the claims asserted in the Adversary Proceeding"). To start, three of the four causes of action in the Complaint before this Court are reasserted in the California Actions.[4] Indeed, just as SVB Group has brought before this Court claims for the turnover of the Account Funds from FDIC-C and from FDIC-R1 and FDIC-R2, it has pleaded those same claims in the FDIC-C and FDIC-R Actions.

---

[3] At the December 20, 2023 conference, counsel for FDIC-R1 indicated that at least one reason why his client sought a prompt decision on its motion to dismiss was SVB Group's indicated desire to take discovery. *See* 12/20/23 Tr. at 16:3-5 ("So we just want this to end. And one of the reasons we want it to end, your Honor, is they also want to take discovery."). Of course, any potential burden posed by discovery would be vitiated by the imposition of the requested stay.

[4] Only in the action before this Court does SVB Group seek a declaration that Defendants possess no claim or right that would permit their exercise of setoff rights with respect to the Account Funds or, alternatively, a declaration that any setoff right "is limited to amounts for which there is a mutuality of obligation" between SVB Group and Defendants. Complaint ¶ 90 (request in Count IV); *see also id.* ¶ 91 ("[T]o the extent the Court finds the FDIC-R has a valid claim or claims that would justify the exercise of a right of setoff, [SVB Group] requests that the Court (i) determine the amount of any such setoff, and (ii) declare that either the FDIC-C or FDIC-R immediately turn over any excess funds to [SVB Group]."); Dkt. 44 at 3 (in explaining why a stay is preferable to voluntary dismissal of the instant action, SVB Group contending that it "is entitled to have the timeliness and (if timely) merits of any set-off issues decided in this Court or the bankruptcy court, where the issue was first raised and where exclusive jurisdiction lies, as contemplated by Count IV of the complaint in this Action").

*Compare* Complaint ¶¶ 65-79, *with* FDIC-C Action, Dkt. 1 ¶¶ 111-120, *and* FDIC-R Action, Dkt. 1 ¶¶ 154-163.  SVB Group's claim that FDIC-C, FDIC-R1, and FDIC-R2 violated the automatic bankruptcy stay under 11 U.S.C. § 362(a), too, is repleaded in the complaints SVB Group has filed in the Northern District of California.  *Compare* Complaint ¶¶ 80-83, *with* FDIC-C Action, Dkt. 1 ¶¶ 121-123, *and* FDIC-R Action, Dkt. 1 ¶¶ 164-167.  In addition, SVB Group seeks essentially the same relief in all three actions.  In the action before this Court, SVB Group seeks an order requiring FDIC-C (or, in the alternative, FDIC-R1 and FDIC-R2) to immediately pay it the full amount of the Account Funds.  Complaint at Prayer for Relief (a), (c).  In the FDIC-C Action, SVB Group seeks an order "declaring that [SVB Group] owns the Account Funds and is entitled to possession thereof."  FDIC-C Action, Dkt. 1 at Prayer for Relief (b).  And in the FDIC-R Action, SVB Group seeks an order restoring its access to the Account Funds.  FDIC-R Action, Dkt. 1 at Prayer for Relief (b).

Given the breadth of this overlap, it is no surprise that in the California Actions, Defendants have filed motions to dismiss raising arguments similar to those raised in the motions pending before this Court, including related jurisdictional arguments under 12 U.S.C. § 1821(d) and 12 U.S.C. § 1821(f).  *See* FDIC-C Action, Dkt. 25 (FDIC-C's motion to dismiss) at 7-11 (arguing that Section 1821(f) bars all but one of SVB Group's "deposit-related claims"); FDIC-R Action, Dkt. 33 (FDIC-R1 and FDIC-R2's motion to dismiss) at 8-9 (arguing that, because certain of SVB Group's claims asserted in the FDIC-R Action were not previously raised in the Section 1821(d) claims process, no court has jurisdiction to hear them).  Thus, allowing both this case and the California Actions to proceed may result not only in unnecessary motion practice but also in inconsistent rulings, which is not in the courts' interest, the interest of any non-parties whom this litigation may affect, or the public's interest.  *See Birmingham Assocs. Ltd. v. Abbott Labs.*, 547

F. Supp. 2d 295, 302 (S.D.N.Y. 2008) ("Stays are particularly appropriate where they promote judicial economy, avoidance of confusion and possible inconsistent results." (internal quotation marks omitted)); *see also Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."). These three factors therefore weigh in favor of a stay.

* * *

A stay has been requested only in this case; no party has requested a stay in either action in the Northern District of California. But the Court pauses to note why it is more sensible that this action—rather than the California Actions—be stayed.

For one, although SVB Group seeks essentially the same relief in the litigation before this Court as it does in the California Actions and even reasserts in the California Actions many of the claims pleaded here, the complaints in the California Actions present broader factual allegations. For instance, in the FDIC-C and FDIC-R Actions, SVB Groups pleads additional facts about key acts taken by the FDIC entities that are not pleaded (and, indeed, could not have been pleaded absent amendment) before this Court, and that appear to further contextualize the asserted bases for SVB Group's requested relief. SVB Group alleges in the FDIC-C Action that "[o]n June 26, 2023, [SVB Group] sent a letter to the FDIC-C demanding that the FDIC-C pay or give [SVB Group] full access to all its uninsured funds[.]" FDIC-C Action, Dkt. 1 ¶ 83. The parties dispute the significance of this letter, but, as further alleged in that case, "on October 20, 2023, . . . the FDIC-C denied [SVB Group] supposed 'claim' for its Account Funds." *Id.* ¶ 97. This denial, to which SVB Group refers in asserting its turnover and standalone APA claims against FDIC-C, *id.* ¶¶ 117, 144, is not alleged in the Complaint in this action. Similarly, although it contends that it was not required to do so, SVB Group alleges in the FDIC-R Action that, on July 10, 2023, it filed

12

"protective Proofs of Claim with each of FDIC-R1 and FDIC-R2."  FDIC-R Action, Dkt. 1 ¶ 117.  Then, as also alleged in the complaint in that action but not in the Complaint here, "[o]n January 5, 2024[,] . . . FDIC-R1 and FDIC-R2 each notified [SVB Group] that it was disallowing the claims."  *Id.* ¶ 119.  In the FDIC-R Action, SVB Group refers to this disallowance in asserting its turnover and due process claims against FDIC-R1 and FDIC-R2.  *Id.* ¶¶ 160, 196.  Given that the more comprehensive sets of factual allegations are before the court in the Northern District of California, there is a certain logic to having the cases proceed there.

Moreover, in arguing that this Court lacks subject matter jurisdiction over the instant action, Defendants have insisted that SVB Group's claims are subject to the claims processes under 12 U.S.C. § 1821(d) (for administrative claims against FDIC as receiver) and 12 U.S.C. § 1821(f) (for administrative claims against FDIC as insurer)—which processes SVB Group had not exhausted before filing the Complaint in this action—and further that, even upon exhaustion, judicial actions challenging the denial of these administrative claims can be brought only in the district of "the depository institution's principal place of business," 12 U.S.C. § 1821(d)(6)(A)(ii); *see also id.* § 1821(f)(4), or in the District of Columbia, *id.* § 1821(d)(6)(A)(ii).  *See* Dkt. 35-1 (FDIC-C's memorandum of law in support of its motion to dismiss) at 10-16; Dkt. 35-3 (FDIC-R1's memorandum of law in support of its motion to dismiss) at 18-20; Dkt. 35-5 (FDIC-R2's memorandum of law in support of its motion to dismiss) at 14-19.  And, as discussed at *supra* III.C, Defendants have raised related jurisdictional arguments under these same provisions in the California Actions.  *See* FDIC-C Action, Dkt. 25 (FDIC-C's motion to dismiss) at 7-11 (arguing that 12 U.S.C. § 1821(f) bars all but one of SVB Group's "deposit-related claims"); FDIC-R Action, Dkt. 33 (FDIC-R1 and FDIC-R2's motion to dismiss) at 8-9 (arguing that, because certain of SVB Group's claims asserted in the FDIC-R Action were not previously raised in the Section

13

1821(d) claims process, no court has jurisdiction to hear them).  The parties appear to agree that if SVB Group was required to exhaust these claims processes in seeking payment of the Account Funds, then the majority (if not the entirety) of the action may not proceed here.  *See* Dkt. 44 at 3 (SVB Group asserting that "[i]f it is determined in either or both of the [California] Actions that [SVB Group] was required to file an administrative claim against each of the FDIC-C and the FDIC-Rs, . . . then [SVB Group]'s claims will be adjudicated in the [California] Actions . . . and the majority of this case can then be discontinued, without prejudice").  The parties also appear to agree that if, on the other hand, SVB Group was not required to exhaust those claims processes, then the litigation may proceed in *either* court.  *See* Dkt. 41 at 2 (SVB Group representing that while it "continues to believe that its pending claims properly are brought in the United States Bankruptcy Court for the Southern District of New York[,] . . . *there is no jurisdictional dispute* concerning [SVB Group]'s ability to bring *all potential claims* against the FDIC-C in the [Northern District of California] and against the FDIC-Rs in either the [District Court for the Northern District of California] or the [District Court for the District of Columbia]" (emphases added)).  In these circumstances, it would seem more efficient for the litigation to proceed in the court whose authority to consider SVB Group's request for relief is undisputed, irrespective of the outcome of the threshold jurisdictional issues raised before both tribunals.

### IV.  Conclusion

Each of the relevant factors weighs in favor of granting a stay pending further developments in the FDIC-C Action and the FDIC-R Action.  Accordingly, SVB Group's second request for a stay, Dkt. 44, is granted, its first request, Dkt. 41, is denied as moot, and this action is stayed pending further order from the Court.  The parties are directed to provide a joint status letter by September 30, 2024, or upon a decision on the pending motions to dismiss in the FDIC-C

Action or FDIC-R Action, whichever is earlier.  The Clerk of Court is respectfully directed to close the motions at Docket Numbers 41 and 44.

    SO ORDERED.

Dated: July 1, 2024
      New York, New York

                                      JOHN P. CRONAN
                                  United States District Judge